## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH HAKIM,

      Plaintiff,

    v.                       Civil Action Number:

UNUM GROUP, d/b/a UNUM LIFE
INSURANCE COMPANY OF AMERICA
AND PAUL REVERE LIFE INSURANCE
COMPANY,

      Defendants.

## COMPLAINT

AND NOW, comes the Plaintiff, Joseph Hakim, by and through his undersigned counsel, Gregory G. Paul, Esquire, and files the within Complaint, to obtain declaratory relief, and recover disability benefits pursuant to an insurance contract. This is a diversity action seeking past damages and declaratory relief for Unum's breach of its obligations to provide coverage under two "own occupation" disability insurance policies as a result of his inability to perform his occupation as Vice-President of national accounts with job duties including travel and sales.

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and because the subject dispute is between citizens of different states.

2.     Venue is proper in this district under 28 U.S.C. § 1391 because the events giving rise to the claims asserted herein occurred in this district, Mr. Hakim resides in this district, and Unum does business in this district.

**PARTIES**

3.      Plaintiff, Joseph Hakim, is an adult individual who resides at Moon Township, Pennsylvania.

4.      Defendants, UNUM and Paul Revere Life Insurance Company, are insurance companies who issued business executive disability income policies #01028987970 and #LAD210633. Both defendants maintain their place of business at 1 Fountain Square, Chattanooga, Tennessee 37402.

**SUMMARY OF ACTION**

5.      Mr. Hakim was employed by PGT Trucking, Inc. as a Vice President from July 9, 1993 until he was unable to continue working on March 6, 2009 through the present due to chronic migraine headaches.

6.      On or about March 6, 2009, Plaintiff was unable to continue working in his own occupation at PGT Trucking, Inc., a position requiring substantial and regular travel and sales up to sixty hours per week.

7.      With a family dependent on his income, Mr. Hakim recognized the need for disability insurance that would protect him from income loss in the event he could no longer work due to injury or illness. As a result, he contacted the Monteverde Group for the purpose of securing disability insurance.

8.      Unum issued policy LAD 210633 and Paul Revere Life Insurance Company issued policy 01028987970. Both policies are "own occupation" disability insurance policies that provide disability coverage when the insured can no longer engage in his own occupation.

9.      Under policy LAD 210633, the long-term disability policy provides disability benefits because of Injury or Sickness (1) restricts your ability to perform the material and substantial duties of your regular occupation to an extent that prevents you from engaging in your regular occupation and (2) you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness. Under policy 0102898797, the long-term disability policy provides disability benefits because of Injury or Sickness (1) restricts your ability to perform the important duties of your occupation and (2) you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness.

10.     On or about December 19, 2009, defendants paid plaintiff disability benefits through June 19, 2010.

11.     On or about June 28, 2010, Defendants denied Plaintiff's long-term disability benefits concluding that "you are capable of returning to work on a full time basis with occasional missed work days from headaches."

12.     Defendant's denial of disability benefits is not consistent with the contract and constitutes bad in its failure to consider plaintiff's treating physicians' opinions, failed to conduct its own medical evaluation despite being permitted to do so under the contract and at Mr. Hakim's suggestion, requiring doctor's to respond with narrative report within ten days, failing to provide a vocational assessment, and finding Mr. Hakim capable of working full-time with accommodations when the policy does not include such accommodations in the policy.

13.     As a result of Defendants' denial of long-term disability benefits, Plaintiff has not received the monthly benefits to which he is entitled under the above two disability insurance policies. (Attached as Ex. 1 and 2).

## Unum's Pattern Of Bad Faith Conduct
## Regarding Its Own Occupation Disability Policies

14.    Unum has a history of acting in bad faith regarding its handling of own occupation disability policies.

15.    In 2002, a class action was filed against Unum in federal court in New York alleging that Unum "illegally victimized, and continues to victimize, many thousands of disabled Americans." That same year a San Francisco federal court upheld a $7.5 million judgment against Unum for the use of bad faith practices to deny disability claims.

16.    In recent years, thousands of lawsuits have been filed against Unum – many of which have involved the improper denial of disability claims under own occupation policies.

17.    On August 31, 2007, for example, the Ninth Circuit upheld a jury finding of bad faith against a Unum subsidiary in connection with its denial of a disability claim under an own occupation policy. *Merrick v. Paul Revere Life Ins. Co.*, 5008 F.3d 1007 (9th Cir. 2007). In *Merrick*, the plaintiff alleged that Unum's denial of his disability claim "was part of a larger scheme to 'scrub' the company's liability for expensive and noncancellable 'own occupation' disability policies." *Id.* at 1012.

18.    Relevant here, the plaintiff's expert in *Merrick* testified that "Unum has a practice of holding regular 'round table' meetings with lawyers, doctors and claims handlers designed to 'tri – age' the most expensive [own occupation disability] claims." *Id.*

19.    Similarly, in *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169 (E.D. 2004), the plaintiff alleged that a Unum subsidiary engaged in bad faith in denying his disability claim under a own occupation policy. Specifically, according to the plaintiff, Unum "went from a 'claim payment' orientation to a 'claim management' orientation, meaning [Unum] set a budget

for claim payments and focused on terminating claims in order to keep payments within the budget." *Id.* at 173.

20.     As an example of Unum's bad faith claims handling of own occupation disability claims, in *Brosnan v. Provident Life and Accident Ins. Co.*, 31 F. Supp.2d 460, 464 (E.D. Pa. 1998), the court found that Unum's argument that the plaintiff, who had purchased his policy while he was a anesthesiologist, was not totally disabled because he could still work as a general practitioner to be "disingenuous at best."

21.     As a result of these bad faith practices, the state insurance commissioners and the United States Department of Labor conducted a multistate examination of Unum's claims handling procedures.

22.     This investigation led to a settlement with Unum in November 2004. *See* Regulatory Settlement Agreement. Pursuant to this settlement, Unum agreed to pay a $15 million fine and reconsider over 200,000 disability claims that it had previously denied.

23.     Most relevant here, Unum agreed to permit regulators to examine its files for evidence of, among other things, (a) "[f]aulty or overly restrictive interpretation or application of policy provisions, including the definition of 'occupation' in 'own occupation policies'" and (b) "[t]hreats to seek repayment of past benefits."

**COUNT I**
**(Breach of Contract)**
**(Monetary Damages)**

24.     The allegations in paragraphs 1 through 23 are incorporated herein.

25.     Mr. Hakim has satisfied all conditions precedent to coverage under the DI Policies.

26.     The DI Policy provides own occupation coverage so that, in the event Mr. Hakim can no longer work in his own occupation, he is entitled to benefits including upon a 20% loss of income.

27.     As of June 2010, Unum ceased making disability payments to Mr. Hakim in violation of his rights under the DI Policy.

28.     To date, Mr. Hakim has suffered damages in excess of $75,000.00 from Unum's improper cessation of payments.

**COUNT II**
**(Breach of Contract)**
**(Declaratory Judgment)**

29.     The allegations in paragraphs 1 through 28 are incorporated herein.

30.     Mr. Hakim has satisfied all conditions precedent to coverage under the DI Policy.

31.     The DI Policy provides own occupation coverage so that, in the event Mr. Hakim can no longer perform the duties of his own occupation, he is entitled to benefits.

32.     Mr. Hakim's physicians substantiate his restrictions and have provided well-founded reasons for Mr. Hakim's inability to work in his own occupation.

33.     In June of 2010, Unum ceased making disability payments to Mr. Hakim in violation of his rights under the DI Policy.

34.     As a direct result of Unum's breach of its obligations under the DI Policy, Mr. Hakim is entitled to a declaration pursuant to 28 U.S.C. §2201 requiring Unum to resume paying him disability payments per month (with cost-of-living adjustments) and to continue making these payments under the insurance policy.

## COUNT III
### (Bad Faith Pursuant to 42 Pa.C.S.A. §8371)

35.     The allegations in paragraphs 1 through 34 are incorporated herein.

36.     Unum has engaged in bad faith conduct regarding its handling of Mr. Hakim's disability claim including, but not limited to, the following:

(1)     representing to Mr. Hakim in its promotional materials that the DI Policy provided own occupation coverage but, after he became disabled, representing to him that the DI Policy provided no benefits without considering vocational factors such as absences from work;

(2)     repeatedly violating the prohibition under the Uniform Insurance Practices Act, 40 Pa.C.S.A. §1171.5(a)(10) and regulations promulgated thereunder against an insurer "[m]isrepresenting pertinent facts or policy or contract provisions relating to the coverage at issue";

(3)     sending the claim to the "special handling" unit and to senior management for "roundtable" discussions for the sole purpose of finding a basis – however pretextual – to terminate benefits;

(4)      adopting a manifestly unreasonable and unsupportable interpretation of the DI Policy to provide a pretextual justification for terminating benefits;

(5)     adopting corporate policies regarding claims handling that were designed to enhance corporate profits by denying or terminating disability claims under own occupation policies without regard to the merits of such claims;

(6)     ignoring the findings of Mr. Hakim's treating physicians ;and

(7)     violating the terms of the Regulatory Settlement Agreement.

37.     Unum's conduct described in detail in the previous paragraph constitutes statutory bad faith under 42 Pa.C.S.A. §8371.

38.     As a direct result of Unum's bad faith conduct, Mr. Hakim has suffered great financial hardship and substantial damages.

## COUNT IV
### (Common Law Bad Faith)

39.     The allegations in paragraphs 1 through 38 are incorporated herein.

40.     Unum had a common law duty under Pennsylvania law to act in good faith toward Mr. Hakim under the DI Policy.

41.     Unum breached this duty by, among other things, terminating coverage based on an unreasonable and unsupported interpretation of the DI Policy, misrepresenting the coverage available under the DI Policy.

42.     As a direct result of such bad faith, Mr. Hakim suffered substantial damages including, but not limited to, the attorney's fees and costs he has incurred in this action to force defendants to honor its contractual obligations under the DI Policy.

43.     For these reasons, pursuant to *Birth Center v. St. Paul Companies, Inc.*, 507 Pa. 386, 400 (2001), Mr. Hakim is entitled to an award of compensatory and consequential damages that returns him to the position he would have been in but for defendants' bad faith conduct plus interest and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that judgment be entered:

(1)     awarding him damages for disability benefits that defendants should have paid since June of 2010 through the present plus interest;

(2)     declaring that under the DI Policies defendants must continue making monthly disability payments with cost-of-living adjustments;

(3)     finding that defendants have engaged in statutory bad faith pursuant to 42 Pa.C.S.A. §8371 and, accordingly, awarding interest, attorney's fees, and punitive damages;

(4)     finding that defendants have engaged in common law bad faith and, accordingly, awarding compensatory damages (including reimbursement for all costs associated with this action), interest, and attorney's fees and costs; and

(5)     granting such other relief as the Court deems proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

MORGAN & PAUL, PLLC

/s/ Gregory G. Paul
GREGORY G. PAUL, ESQUIRE
PA ID Number:  83334
409 Broad Street
Suite 270
Sewickley, PA 15143
(412) 259-8375
(888) 822-9421 (facsimile)
gregpaul@morgan-paul.com
Attorney for Plaintiff